

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Richard Ellis,

     *Plaintiff,*

    v.

Lions Gate Entertainment Corp.,

    and

Nu Image

             *Defendants.*

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT

For his Complaint, Plaintiff Richard Ellis alleges as follows:

### The Parties

1.    The Plaintiff Richard Ellis is an individual with a place of residence in New York, NY.

2.    Upon information and belief, Defendant Lions Gate Entertainment Corp. ("Lions Gate") has a principal place of business in New York, NY with a mailing address of 75 Rockefeller Plaza, New York, NY 10019, and Defendant Nu Image has a principle place of business in Los Angeles, CA with a mailing address of 6423 Wilshire Blvd., Los Angeles, CA 90048. Lions Gate and Nu Image are hereinafter collectively referred to as the Defendants.

### Jurisdiction and Venue

3.    The Court has jurisdiction over Defendants where Defendants distribute copies of a film to New York residents and broadcast or license the broadcast of such film on television to

New York residents, with the knowledge that such film, and its distribution and broadcast have caused and continue to cause tortious injury within New York to Mr. Ellis, a New York resident. Additionally, the Court has jurisdiction over Defendant Lions Gate where Defendant Lions Gate maintains a place of business in New York.

4.    The Court has exclusive subject matter jurisdiction over the copyright claims in this Complaint under 28 U.S.C. § 1331 and 1338(a) and 17 U.S.C. § 301(a).  The Court has subject matter over the other claims in this Complaint under 28 U.S.C. § 1367.

5.    Venue is proper in this jurisdiction and district under 28 U.S.C. §§ 1391(c).

<strong><u>Factual Allegations</u></strong>

6.    Richard Ellis is an author, lecturer, and visual artist.  He is widely regarded as the foremost painter of marine natural history subjects in America.  Mr. Ellis's paintings and drawings have been exhibited at museums and galleries around the world, and he is the creator of two murals for the New Bedford Whaling Museum (Massachusetts), one for Mystic Seaport (Connecticut), and one for the Denver Museum of Natural History.  One hundred and six of his paintings were selected by the Smithsonian Institution to form a traveling exhibit of the marine mammals of the world, and these paintings are now in the permanent collection of Whaleworld, a museum in Albany, Western Australia.  Mr. Ellis's articles on marine biology and other topics have appeared in such journals as Smithsonian, Science Digest, National Geographic, Geo, Audubon, Natural History, Animal Kingdom, and Curator, and he is the author of more than twenty (20) books on marine natural history, on subjects such as whales, dolphins, sharks, whaling history, deep-sea fishes, over-fishing, the giant squid, and the endangered bluefin tuna. He is also the author and illustrator of the definitive "Encyclopedia of the Sea."  His books have been translated into Italian, Spanish, German, Polish, and Korean.  Mr. Ellis has lectured

2

extensively on marine biology and other topics at museums and universities throughout the United States and abroad, and has made numerous appearances on television, speaking on subjects such as whaling history, shark attacks, and the giant squid. Mr. Ellis is currently a research Associate at the American Museum of Natural History in New York, and the designer of the Hall of Ocean Life at the Museum.

7.    Mr. Ellis has invested great time, effort, and capital in creating and maintaining his reputation as one of the foremost experts in the field of ichthyology and to build up the commercial value of his name and public persona.

8.    In 1991, Mr. Ellis illustrated and co-authored a work of non-fiction entitled *Great White Shark* (HarperCollins/Stanford University Press). *Great White Shark* is a complete, definitive, and scientific account of the great white shark.

9.    One of Mr. Ellis's illustrations, a painting of a white shark (the "Shark Painting"), appears on the front of the jacket of *Great White Shark*, along with Mr. Ellis's name. The front of the jacket appears below:



10.    Mr. Ellis expended time, intellectual effort, and capital to create the Shark Painting and the *Great White Shark* book.

11.    The Shark Painting constitutes original expression and copyrightable subject matter, the copyright in which is owned by Mr. Ellis.

12.    Mr. Ellis registered the copyright in and to the Shark Painting as part of a collection of paintings under U.S. Copyright Registration No. VA 625-073, which issued on November 15, 1993.  Attached hereto as Exhibit A is a copy of Registration No. VA 625-073. Mr. Ellis has at no time relinquished ownership of his copyright in the Shark Painting.

13.    In 1994, Mr. Ellis authored *Monsters of the Sea* (Alfred A. Knopf).  In this book, Mr. Ellis provides an analysis of myths, early natural history texts, and other literature to debunk popular tales of "sea monsters" in light of biological facts known today.  He also includes accurate life history details about the sea animals covered.

### Defendants Improperly Use Mr. Ellis' Copyrighted Material in their Film

14.    Upon information and belief, Defendant Nu Image is a film production company and distributor.

15.    Upon information and belief, Defendant Lions Gate is a film production company and distributor.

16.    Upon information and belief, Defendant Nu Image produced and distributed a film entitled *Shark Attack 3: Megalodon* ("Film") in 2002.

17.    Upon information and belief, Lions Gate is also a distributor of the Film.

18.    Upon information and belief, Defendants first distributed the Film in the United States home video market on digital video disk (DVD) format in 2007 and the DVD version of

4

the Film is currently available for purchase from various retailers and on Defendant Lions Gate's website.

19.     Upon information and belief, the Film was broadcast on television in the state of New York on June 5, 2009.

20.     Unlike Mr. Ellis's *Great White Shark*, an educational work of science, the Film is designed as an entertainment piece. Marketed with the tagline, "The terror has surfaced," it is one of a series of farcical horror films that focus on highly unrealistic, fictional tales and depictions of shark attacks involving, among other things, humans, boats, personal watercraft, and underwater cabling.

21.     In one of the film's early scenes ("the Scene"), the main male protagonist is sitting with the main female protagonist in her hotel room when she reveals that a *Carcharodon megalodon* shark ("*C. megalodon* shark"),  which existed during the Miocene and Pliocene Epochs, has inexplicably re-emerged from extinction and is now responsible for the rash of local attacks. As she is explaining this conclusion, the female protagonist hands what is suggested to be Mr. Ellis's *Great White Shark* book to the male protagonist, and he is seen reviewing it.

22.     This book ("the Replica Book") bears a book jacket that is an unlicensed copy of the jacket of Mr. Ellis's book *Great White Shark*.

23.     The front of the Replica Book's jacket bears Mr. Ellis's name, the title *Great White Shark*, and a copy of the Shark Painting from the cover of Mr. Ellis's book.  The book's title, Mr. Ellis's name, and the copy of Mr. Ellis's shark drawing are clearly shown multiple times during the Scene. At one point, the front of the jacket containing all of these details is

shown in its entirety in the following full-screen, close-up shot:



24.     During the Scene, the female protagonist hands the Replica Book to the male protagonist to help explain her conclusion that the *C. megalodon* shark has somehow returned from extinction.

25.     During the Scene, the male character is then shown opening the Replica Book and turning to two pages of the Replica Book, giving the impression that these pages are actual copies of pages in Mr. Ellis's book.

26.     These Replica Book pages contain poorly printed images and text purporting to detail the jaw size and bodily dimensions of the *C. megalodon* shark, and are shown as follows:





27.    These Replica Book pages are not contained in *Great White Shark* and were not authored by Mr. Ellis.

28.    Upon information and belief, Defendants knowingly created the Replica Book by intentionally inserting these pages into a copy of Mr. Ellis's *Great White Shark* book.

29.    The materials contained in Mr. Ellis's book are professionally printed.

30.    Through the juxtaposition of Mr. Ellis's name and copies of his books with dialogue purporting to use them to confirm the existence of a *C. megalodon* shark, the

Defendants purposefully create the false impression with viewers that Mr. Ellis confirmed that this extinct shark still exists.

31.     It is Mr. Ellis's belief as an expert in the field of ichthyology that the *C. megalodon* shark has been extinct for over 1 million years.  Upon information and belief, this opinion is shared universally amongst respected experts in the field of ichthyology.

32.     Mr. Ellis did not authorize the use of his name or the Shark Painting on the Replica Book or in the Film.

33.     The back cover of Mr. Ellis's *Monsters of the Sea* is also shown during the Scene and Mr. Ellis's name is clearly depicted thereon, again with the intent to convey his endorsement of the existence of a pre-historic shark.

34.     Mr. Ellis neither authorized the use of his name nor use of the back cover of *Monsters of the Sea* in the Film.

**Defendants Improperly Use Mr. Ellis' Copyright Materials to Advertise Their Film**

35.     Defendants have released an advertisement for the Film ("Advertisement") containing portions of the Scene described above, including a shot in which the back cover of the Replica Book bearing the *Great White Shark* title is clearly depicted, as can be seen below:

36.    The Advertisement also contains footage showing the Replica Book being opened to the two pages discussed above in Paragraph 26 that improperly attributed their authorship to Mr. Ellis and his work *Great White Shark*. The footage depicting these pages is included in the Advertisement in a full–screen, close up shot.

37.    Mr. Ellis did not authorize the use of his name or the Shark Painting on the Replica Book, and did not authorize use of his *Great White Shark* book in the Advertisement.

38.    Upon information and belief, the Advertisement has been distributed in New York.

39.    Through such use, Defendants have appropriated Mr. Ellis's name and reputation to bolster the credibility of the Film.

**COUNT ONE - Copyright Infringement**

40.    Mr. Ellis repeats and incorporates by reference the allegations of paragraphs 1 through 39, above.

41.     Mr. Ellis owns the registered copyright in and to the Shark Painting. Mr. Ellis has at no time relinquished ownership of his copyright in the Shark Painting.

42.     Defendants have reproduced in the film, and continue to reproduce in copies and broadcasts thereof, identical representations, in whole or in part, of Mr. Ellis's Shark Painting without permission of Mr. Ellis.

43.     The acts of Defendants constitute copyright infringement of the Copyrighted Works under 17 U.S.C. §§ 106 and 501, et seq.

44.     Defendants will continue to infringe Mr. Ellis's Shark Painting unless permanently enjoined by this Court.

45.     Mr. Ellis has been and continues to be damaged by Defendants' acts of infringement, and is entitled to a permanent injunction and an award of his actual damages and any profits of Defendant under 17 U.S.C. §§ 502, 504(a)(1), and 504(b).

46.     Upon information and belief, the infringing acts of Defendants were undertaken and/or continue with knowledge of Mr. Ellis's rights and without any good faith basis in law or fact that Defendants' actions were or are legal, thus Defendants' infringing acts were committed willfully and with reckless disregard of Mr. Ellis's known rights.

### COUNT TWO – Defamation

47.     Mr. Ellis repeats and incorporates by reference the allegations of paragraphs 1 through 46, above.

48.     By displaying the identifying aspects of Mr. Ellis's *Great White Shark* book on the jacket of the Replica Book, in both the Film and in the Advertisement, and then displaying a main character turning to pages within the Replica Book that do not exist in Mr. Ellis's book, a

viewer would believe that these pages exist in Mr. Ellis's *Great White Shark* book, which is untrue.

49.    Such display constitutes a false statement of fact that Mr. Ellis is the author of these pages.

50.    Such display constitutes a knowingly false statement of fact that Mr. Ellis is the author of these inserted pages in *Great White Shark*.

51.    Defendant's repeated depiction of Mr. Ellis's name on the jacket of the Replica Book and on the copy of *Monsters of the Sea*, in juxtaposition with dialogue confirming the existence of a *C. megalodon* shark, implies that Mr. Ellis believes *C. megalodon* sharks still exist and therefore constitutes a knowingly false statement of fact.

52.    These false statements of fact have been and continue to be published to all viewers of the Film.

53.    The materials depicted in the Replica Book are of a poor quality, which falls well below the quality of the materials contained in *Great White Shark*.

54.    Mr. Ellis believes that the *C. megalodon* shark is extinct and, upon information and belief, this opinion is shared universally amongst respected experts in the field of ichthyology.

55.    Defendants published the Film and the false statements contained therein within the state of New York and without privilege or authorization from Mr. Ellis.

56.    Upon information and belief, Defendants published the false statements with actual knowledge of their falsity or with a reckless disregard as to their truth or falsity.

57.    Defendants' false statements of fact concern Mr. Ellis's reputation as an author and ichthyologist, and consequently injure Mr. Ellis in his trade, occupation, or business, and are defamatory *per se* under New York common law.

58.    Defendants will continue to publish these defamatory statements unless permanently enjoined by this Court.

59.    Mr. Ellis has and continues to be damaged by Defendant's defamatory statements and is entitled to a permanent injunction and an award of his actual damages and attorneys' fees.

60.    Upon information and belief Defendants' false statements were made recklessly and with willful disregard for Mr. Ellis's rights, and Mr. Ellis requests that exemplary damages be assessed against Defendant in an amount to be determined at trial.

## COUNT THREE – Unfair Competition under Lanham Act § 43(a)

61.    Mr. Ellis repeats and incorporates by reference the allegations of paragraphs 1 through 60 above.

62.    By displaying the identifying aspects of Mr. Ellis's *Great White Shark* book on the jacket of the Replica Book, in both the Film and in the Advertisement, and then displaying a main character turning to pages within the Replica Book that do not exist in Mr. Ellis's book, the viewer is left with the impression that these pages exist in Mr. Ellis's *Great White Shark* book.

63.    Through such display, Defendants have made, and continue to make, false factual representations regarding the nature, characteristics, and qualities of Mr. Ellis's *Great White Shark* book.

12

64.    Defendants have used and continue to use these false representations on and in connection with their commercially distributed Film.

65.    Defendants have made, and continue to make, such false representations in the context of commercial advertising for the Film.

66.    Mr. Ellis has been damaged by such false representations.

67.    The acts of Defendants constitute unfair competition under the Lanham Act § 43(a).

68.    Defendants will continue these acts of unfair competition unless permanently enjoined by this Court.

69.    Mr. Ellis has been and continues to be damaged by Defendants' acts of unfair competition, and is entitled to a permanent injunction and an award of three times Mr. Ellis's damages, and any profits of Defendant under 15 U.S.C. §1117.

## COUNT FOUR – Product Disparagement

70.    Mr. Ellis repeats and incorporates by reference the allegations of paragraphs 1 through 69 above.

71.    By displaying the identifying aspects of Mr. Ellis's *Great White Shark* book on the jacket of the Replica Book, in both the Film and in the Advertisement, and then displaying a main character turning to pages within the Replica Book that do not exist in Mr. Ellis's book, Defendants have intentionally communicated to third persons the false statement that *Great White Shark* contains the materials depicted in the Replica Book.

72.    Upon information and belief, Defendants made such false statement with knowledge of its falsity or with reckless disregard as to its truth or falsity.

13

73.    Mr. Ellis expended time and effort to create the high quality materials contained in *Great White Shark*.

74.    As the materials depicted in the Replica Book do not appear in Mr. Ellis's *Great White Shark* book and are of a lesser quality than those contained in *Great White Shark*, Defendants' false statement denigrates the quality of Mr. Ellis's *Great White Shark* book.

75.    Defendants made this statement without privilege and it has resulted in direct financial loss to Mr. Ellis, including, without limitation, the legal fees that Mr. Ellis has been forced to expend in attempting to halt Defendants' ongoing distribution and broadcast of the Film and these disparaging statements contained therein.

76.    Defendants' actions constitute product disparagement under New York law.

77.    Defendants will continue to disparage Mr. Ellis's *Great White Shark* unless permanently enjoined by this Court.

78.    Mr. Ellis has been and continues to be injured as a result of Defendants' disparagement of his *Great White Shark* book and Mr. Ellis is entitled to a permanent injunction and an award of his actual damages under New York law.


## COUNT FIVE – Deceptive Trade Practices

79.    Mr. Ellis repeats and incorporates by reference the allegations of paragraphs 1 through 78, above.

80.    By displaying the identifying aspects of Mr. Ellis's *Great White Shark* book on the jacket of the Replica Book, in both the Film and in the Advertisement, and then displaying a main character turning to pages within the Replica Book that do not exist in Mr. Ellis's book,

the viewer is left with the impression that these pages exist in Mr. Ellis's *Great White Shark* book.

81.     By displaying Mr. Ellis's books in juxtaposition with dialogue confirming the existence of a *C. megalodon* shark, Defendants imply that Mr. Ellis's books support this belief.

82.     The Film has been shown in New York to New York residents.

83.     Such residents are likely to believe that *Great White Shark* contains the inferior and unauthorized materials that Defendants inserted into the Replica Book, and to be injured thereby.

84.     Such residents are likely to believe that Mr. Ellis's books confirm the existence of the *C. megalodon* shark, and to be injured thereby.

85.     Defendants' false statements as to the contents of Mr. Ellis's books, made both in the Film and the Advertisement, constitute a material and misleading consumer-oriented activity, and are a deceptive trade practice under New York General Business Law § 349.

86.     Defendant will continue these deceptive trade practices unless permanently enjoined by this Court.

87.     Mr. Ellis has been and continues to be injured as a result of Defendants' deceptive trade practices and is entitled to a permanent injunction and an award of his actual damages resulting from such injury under New York General Business Law § 349(h).

88.     Defendant willfully or knowingly engaged in these deceptive trade practices and Mr. Ellis is therefore entitled to an award of treble damages and his attorneys' fees pursuant to New York General Business Law § 349(h).

## COUNT SIX – Violation of New York Civil Rights Law § 51

89.     Mr. Ellis repeats and incorporates by reference the allegations of paragraphs 1 through 87, above.

90.     Mr. Ellis has invested great time and effort to build up the commercial value of his name and public persona.

91.     Defendants display Mr. Ellis's name and books throughout the Scene and display Mr. Ellis's *Great White Shark* book, which is synonymous with Mr. Ellis himself, in the Advertisement.

92.     Through the distribution and broadcast of the Film and the Advertisement in New York, Defendants' use of Mr. Ellis's name is made within this state.

93.     Defendants' use of Mr. Ellis's name in the commercially distributed Film is being made for the purposes of trade and without Mr. Ellis's consent.

94.     Defendants' use of Mr. Ellis's *Great White Shark* book in the Advertisement is being made for purposes of trade and without Mr. Ellis's consent.

95.     Such uses constitute a violation of New York Civil Rights Law § 51.

96.     Defendants will continue to violate Mr. Ellis's rights under this law unless permanently enjoined by this Court.

97.     Mr. Ellis has been and continues to be damaged by Defendants' use of Mr. Ellis's name in this manner and is entitled to a preliminary injunction and an award of his actual damages under New York Civil Rights Law § 51.

98.     Upon information and belief, Defendants knowingly used Mr. Ellis's name in violation of New York Civil Rights Law § 51 and Mr. Ellis therefore requests that an award of exemplary damages by assessed.

16

## Prayer for Relief

WHEREFORE, Mr. Ellis respectfully prays that this Court:

(1) Enter judgment in favor of Mr. Ellis and against Defendant on each of the counts in the Complaint;

(2) Find that Defendants acted recklessly and with willful disregard for the rights of Mr. Ellis;

(3) Preliminarily and permanently enjoin Defendants from reproducing, publishing, posting, copying, offering to copy, broadcasting, or otherwise distributing the Film, including all versions thereof;

(4) Order the Defendants to account for and pay to Mr. Ellis all gains, profits and savings derived from its acts of infringement;

(5) Award Mr. Ellis his damages, in addition to Defendants' profits, as a result of Defendants' acts of infringement;

(6) In the alternative, and if Mr. Ellis so elects, award Mr. Ellis statutory damages in the amount of $150,000 for the Shark Painting infringed by Defendants, on account of Defendants' willfulness, and Mr. Ellis's attorneys' fees pursuant to the Copyright Act.

(7) Order Defendants to deliver up and surrender to Mr. Ellis all copies of the Film and any other infringing materials for destruction;

(8) Award Mr. Ellis his actual damages resulting from Defendants' false, defamatory statements about Mr. Ellis, and his attorneys' fees;

(9) Award Mr. Ellis his actual damages, including his attorneys' fees, resulting from Defendants' disparaging statements about *Great White Shark*;

(10) Award Mr. Ellis three times his actual damages resulting from Defendants' deceptive trade practices and his attorneys' fees;

(11) Award Mr. Ellis his actual damages resulting from Defendants' violation of Mr. Ellis's rights under New York Civil Rights Law § 51, and exemplary damages;

(12) Award Mr. Ellis such other relief as the Court deems just and equitable, including attorneys' fees.

## JURY DEMAND

Mr. Ellis demands trial by jury on all issues triable thereby.

Dated:  June 30, 2009

Raymond R. Castello
FISH & RICHARDSON P.C.
601 Lexington Avenue – 52nd Floor
New York, NY 10022-4611
P (212) 765-5070
F (212) 258-2291

*Attorney For Plaintiff, Richard Ellis*

# EXHIBIT A

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**

 

VA 625 – 073

| VA | | VAU |

EFFECTIVE DATE OF REGISTRATION

NOV 15 1993

Month        Day        Year

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

---

**1**

TITLE OF THIS WORK▼
GREAT WHITE SHARK

NATURE OF THIS WORK ▼ See instructions
illustrated book

PREVIOUS OR ALTERNATIVE TITLES▼

PUBLICATION AS A CONTRIBUTION  If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work▼

If published in a periodical or serial give:  Volume▼        Number▼        Issue Date▼        On Pages▼

---

**2**

NAME OF AUTHOR▼
Richard Ellis

DATES OF BIRTH AND DEATH
Year Born▼ Year Died▼
1938

Was this contribution to the work a "work made for hire"?
☐ Yes
☒ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
     Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP  Check appropriate box(es). **See instructions.**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☒ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work
☐ Design on sheetlike material

NAME OF AUTHOR▼

DATES OF BIRTH AND DEATH
Year Born▼ Year Died▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions

NATURE OF AUTHORSHIP  Check appropriate box(es). **See instructions.**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work
☐ Design on sheetlike material

---

**3  a**

YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED  This information must be given in all cases.
1991 ◀Year

**b**

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month▶ October  Day▶ 7  Year▶ 1991
USA ◀ Nation

---

**4**

COPYRIGHT CLAIMANT(S)  Name and address must be given even if the claimant is the same as the author given in space 2.▼
Richard Ellis
c/o Brandt & Brandt
1501 Broadway
New York, NY  10036

TRANSFER  If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright.▼

See instructions before completing this space

APPLICATION RECEIVED
NOV 15 1993
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
NOV 15 1993
REMITTANCE NUMBER AND DATE

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶**  • Complete all applicable spaces (numbers 5-9) on the reverse of this page.
• See detailed instructions.    • Sign the form at line 8.

This form was electronically produced by Elite Federal Forms. Forms Manager

DO NOT WRITE HERE
Page 1 of ___ pages

\*Amended by CO, authority phone call of 4/15/94
with Joanne Fallert.

| EXAMINED BY | | FORM VA |
|---|---|---|
| CHECKED BY | | |
| ☒ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office? **5**
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: **Previous Registration Number** ▼    **Year of Registration** ▼

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation. **6**
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

*some artwork*

See instructions before completing this space.

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

*twenty-eight paintings and drawings*

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account. **7**
Name ▼    **Account Number** ▼
HarperCollins, Publishers, Inc.    DA064726

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼
Joanne Fallert/HarperCollins, Publishers, Inc.
10 East 53rd Street
New York, NY 10022

Be sure to give your daytime phone number

Area Code & Telephone Number ▶ 212-207-7533

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the **8**
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of    HarperCollins, Publishers, Inc.
    Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Joanne Fallert    date ▶ 11/02/93

Handwritten signature (X) ▼    *Joanne Fallert*

**MAIL CERTIFICATE TO** **9**
Name ▼ HarperCollins, Publishers, Inc., ATTN: J. Fallert
Number/Street/Apartment Number ▼
10 East 53rd Street, 12th floor
City/State/ZIP ▼
New York, NY 10022

Certificate will be mailed in window envelope

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Register of Copyrights
Library of Congress
Washington, D.C. 20559

The Copyright Office has the authority to adjust fees at 5-year intervals, based on changes in the Consumer Price Index. The next adjustment is due in 1995. Please contact the Copyright Office after July 1995 to determine the actual fee schedule.

\*17 U.S.C. §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.